## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALTICOR INC., a Michigan corporation, and AMWAY CORP., a Virginia corporation, | Case No. _____ |
| Plaintiffs, | **COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR VIOLATION OF 15 USC § 1114; 15 USC § 1125(a); 15 USC § 1125(c); TORTIOUS INTERFERENCE; AND RELATED CLAIMS** |
| v. | |
| HUI FANG YANG, a natural person, QI RUI INC, a New York corporation, and JOHN DOES 1-10, individually or as corporate/business entities, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiffs Alticor Inc. and Amway Corp. (collectively, "Plaintiffs") bring this action against defendants Hui Fang Yang, Qu Rui Inc, and John Does 1-10 (collectively, "Defendants") for (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a); (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (3) trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); (4) common law trademark infringement and unfair competition; (5) unfair and deceptive business practices in violation of NY Gen. Bus. L. § 349; and (6) tortious interference with existing and/or prospective contracts and business relationships. These claims arise from Defendants' misappropriation of Plaintiffs' trademarks in connection with Defendants' unlawful and unauthorized sale of materially different and non-genuine Amway products on the Internet to unwitting customers. In support of their complaint, Plaintiffs allege as follows:

### PARTIES

1.      Alticor Inc. ("Alticor") is a corporation, organized under the laws of the State of Michigan, with its principal place of business located in Ada, Michigan. Alticor is the parent

company of Amway Corp. and the owner of the Amway family of trademarks and all associated intellectual property rights.

2.      Amway Corp. ("Amway") is a corporation, organized under the laws of the State of Virginia, with its principal place of business located in Ada, Michigan.

3.      Hui Fang Yang ("Yang") is a natural person who, upon information and belief, resides at 847 47th Street, Brooklyn, New York 11220.  Upon information and belief, Yang operates or assists in the operation of an online storefront on www.ebay.com ("eBay") that is currently called "huiya-30."   Through the "huiya-30" storefront, Yang does business throughout the United States.

4.      Qi Rui Inc is a corporation, organized under the laws of the State of New York, with its principal place of business located at 847 47th Street, Brooklyn, New York 11220.  Upon information and belief, Qi Rui Inc operates or assists in the operation of the "huiya-30" storefront on eBay.  Through the "huiya-30" storefront, Qi Rui Inc does business throughout the United States.

5.      Upon information and belief, Yang is in control of, a principal of, and primarily responsible for Qi Rui Inc and its actions.

6.      Plaintiffs assert claims against Yang in both her individual capacity as well as her capacity as a corporate officer of Qi Rui Inc.

7.      Until they conduct discovery, Plaintiffs cannot determine whether Yang in her individual capacity, Qi Rui Inc, or both operate the "huiya-30" eBay storefront.

8.      Alternatively, upon information and belief, Yang directs, controls, ratifies, participates in, or is the moving force behind the sales of infringing products bearing Plaintiffs'

trademarks by Qi Rui Inc.  Accordingly, Yang is personally liable for infringing activities of Qi Rui Inc without regard to piercing the corporate veil.

9. Alternatively, on information and belief, Qi Rui Inc follows so few corporate formalities and is so dominated by Yang that it is merely an alter ego of Yang.  This is reflected, in part, by the fact that the publicly-listed principal place of business of Qi Rui Inc and the designated address for service of process on Qi Rui Inc are the same address as Yang's home residence.  Accordingly, Plaintiffs are entitled to pierce the corporate veil of Qi Rui Inc and hold Yang personally liable for the infringing activities of Qi Rui Inc.

10. Plaintiffs believe that other individuals or entities may be responsible for the events and occurrences referred to herein or be otherwise interested in the outcome of the dispute. The true names, involvement, and capacities, whether individual, corporate, associated, or otherwise of these individuals or entities are unknown to Plaintiffs.  Therefore, Plaintiffs sue these Defendants by the fictitious names John Does 1 through 10.  When the true names, involvement, and capacities of these parties are ascertained, Plaintiffs will seek leave to amend this Complaint accordingly.  If Plaintiffs do not identify any such parties, they will dismiss these Defendants from this action.

## JURISDICTION

11. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367.  Plaintiffs' federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and their claims arising under the laws of the State of New York are substantially related to their federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

12.     This Court has personal jurisdiction over Defendants because they reside in the State of New York and transact business within New York.  Defendants store their inventory within New York and ship infringing products from New York when consumers purchase products from Defendants over the Internet.

## VENUE

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district or, in the alternative, because Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### Plaintiffs and Their Trademarks

14.     Plaintiffs are worldwide leaders in developing, manufacturing, and providing nutrition, beauty, bath and body, cookware, household, and other products to consumers under various brands, including Amway®, Nutrilite®, and Artistry® (collectively, "Amway products"). Plaintiffs permit Amway products to be sold to U.S. consumers only through Amway.com and through Amway Independent Business Owners ("IBOs"), which enter into contracts with Amway to be able to sell Amway products.

15.     Plaintiffs devote a significant amount of time, energy, and resources toward protecting the value of their brands, products, name, and reputation.  By distributing products exclusively through their own website and through IBOs, Plaintiffs ensure the safety, well-being, and satisfaction of consumers and maintain the integrity and reputation of the Amway family of brands.  IBOs provide users of Amway products with explanation and guidance about the safe and proper use of Amway products.  IBOs are required by their contracts with Amway to exercise strict

4

quality control requirements over the products they sell to consumers.  In the highly competitive nutrition and household product market, quality and customer service are a fundamental part of the consumer's decision to purchase a product.

16.     To promote and protect the Amway family of brands, Alticor has registered numerous trademarks with the United States Patent and Trademark Office.  These trademarks include, but are not limited to: AMWAY® (U.S. Trademark Registration Nos. 716,672, 847,709, 4,031,832, 4,199,852, 4,289,794, and 4,481,517), NUTRILITE® (U.S. Trademark Registration Nos. 402,891, 689,389, 2,145,912, 3,535,340, 4,748,189, and 4,478,190), and ARTISTRY® (U.S. Trademark Registration Nos. 856,184, 1,505,505, 1,519,877, and 4,645,525), (collectively, the "Amway Registered Trademarks").

17.     Alticor has licensed the Amway Registered Trademarks to various subsidiaries, including Amway.

18.     The registration for each of the Amway Registered Trademarks is valid, subsisting, and in full force and effect.

19.     Plaintiffs actively use and market all of the Amway Registered Trademarks in commerce.

20.     Due to the quality and exclusive distribution of Amway products, and because Plaintiffs are recognized as the sources of high quality products, the Amway Registered Trademarks have substantial value.

**Plaintiffs Exercise Strict Quality Controls Over the Production and Distribution of Amway Products, Allow Products To Be Sold Only in Certain Channels, and Provide a Guarantee for Products Purchased from IBOs**

21.     To maintain quality controls over Amway products, Plaintiffs allow Amway products to be sold in the United States only by Plaintiffs themselves (through Amway.com) or by IBOs.  Plaintiffs' ability to maintain quality controls is essential to the integrity and safety of

Amway products, as well as to the value of the Amway Registered Trademarks and the satisfaction of consumers.

22.     IBOs must enter into contracts with Amway to be permitted to sell Amway products.  These contracts authorize IBOs to sell Amway products only in certain channels, and require IBOs to provide various customer services and exercise various quality controls over Amway products (collectively, the "Amway Rules").  Amway enforces the quality controls established in the Amway Rules and IBO contracts.

23.     The Amway Rules require, among other customer service requirements and protections, that IBOs provide customers with vital information regarding Amway products and their uses.  This person-to-person interaction between IBOs and their customers allows for explanation and guidance on the safe and proper use of Amway products.  To this end, the Amway Rules prohibit IBOs from selling or displaying Amway products in retail establishments.

24.     Under the Amway Rules, IBOs must also provide personal services to customers concurrently with and after their sales.  IBOs have access to literature and other educational materials developed to advise customers on each product's purpose, features, and benefits.  IBOs are therefore uniquely qualified to explain best practices for safe and optimal use of Amway products, and these services of course cannot be provided by non-IBOs who sell Amway products.

25.     IBOs are also trained and instructed to present only complete and truthful information about Amway's products and services, and must refer only to the statements permitted in authorized literature.  It is essential to consumer well-being and Plaintiffs' reputation that customers are able to make fully informed decisions about whether to purchase Amway products and which products to purchase.  The Amway Rules prohibit IBOs from providing misleading or

false information to customers, and Amway monitors its IBOs to ensure that IBOs do not violate these prohibitions.

26.     To ensure that customers receive products of the quality they have come to expect from Plaintiffs, IBOs are prohibited from altering any Amway product, label, or accompanying literature.  IBOs may sell Amway products only in their original packaging and formulation to prevent customer confusion and erosion in the quality and value of Amway products.  IBOs must explain to customers that Amway products are safest when used as directed on the product labels.

27.     IBOs must also follow storage and handling requirements for all Amway products, including storing products in cool, dry place and ensuring that products are never exposed to freezing temperatures.  Numerous Amway products are permanently damaged if they are allowed to freeze.

28.     Amway tracks all purchases of Amway products from Amway.com and from IBOs, so that it can conduct a recall or disseminate other important consumer safety information in the event that a quality control issue arises.  Amway is not able to track products that are sold outside of authorized channels, however, and is thus unable to alert customers who purchased from unauthorized sellers if a quality issue arises.

29.     For all of these reasons, Plaintiffs limit third party sales of their products to IBOs who have access to, and must follow, the Amway Rules.  By so limiting their sales, Plaintiffs are able to protect the safety of their consumers and maintain the integrity and reputation of the Amway family of brands.

30.     Amway also prohibits IBOs from selling Amway products to persons or entities that IBOs know, or have reason to know, are going to resell those products on the Internet (including on eBay and www.amazon.com ("Amazon")).  The purpose of this restriction is to

ensure that Amway products are sold to consumers only by Plaintiffs themselves or by IBOs who are subject to and follow Plaintiffs' quality controls.

31.    Amway also prohibits IBOs from selling Amway products on the Internet unless they use an authorized Amway.com platform.  This prohibition includes sales on online auction websites such as eBay, online marketplace websites such as Amazon, and other independent, unauthorized websites.  Amway prohibits sales on these websites, among other reasons, because they allow sellers to sell anonymously and anonymous online sellers often sell products that are improperly stored or handled, damaged, defective, previously used, counterfeit, or otherwise not in conformance with Plaintiffs' quality controls.   Sellers are also not able to provide the personalized customer services that Amway requires IBOs to provide when they sell anonymously through independent commercial websites, akin to sales through brick-and-mortar retail establishments.

32.    Amway provides customers who purchase Amway products through authorized channels of distribution with the Amway Satisfaction Guarantee ("Satisfaction Guarantee"), which allows customers who are not completely satisfied with an Amway product to receive a refund or product replacement within 180 days of purchase.  Customers who purchased Amway products from IBOs are given a full refund, credit, or a product exchange by the IBO from whom they purchased their product.  Customers who purchased products from Amway.com may return their products to Amway, in accordance with return instructions on their product's official packing slip.

33.    Amway offers the Satisfaction Guarantee only for products that were sold by sellers who are subject to Plaintiffs' quality controls and have agreed to follow their quality controls—specifically, IBOs and Plaintiffs themselves.  Because non-IBOs are not subject to Plaintiffs' quality controls and Amway cannot therefore ensure the quality of products sold by non-IBOs, the

Satisfaction Guarantee is not available for Amway products purchased from any third party who is not an IBO.

### Amway's Discovery of Defendants' Sales of Amway Products on the Internet

34. Because the unauthorized sale of Amway products over the Internet threatens the safety of consumers and the reputation and goodwill associated with the Amway Registered Trademarks, Amway polices the sales of its products online.

35. Through these efforts, Amway discovered that high volumes of infringing products bearing the Amway Registered Trademarks ("Infringing Products") were being sold on eBay through a storefront called "huiya-30."

36. Amway conducted an investigation to determine the identities of the individual(s) or entity(ies) that operate the "huiya-30" eBay storefront. As a part of that investigation, Amway arranged for an Infringing Product to be purchased from the storefront in November 2018. The product that was received had a return address of "Huifang Yang, 4709 8th Ave, Store, Brooklyn, NY 11220" (the "8th Avenue Address").

37. On or about January 31, 2019 and February 18, 2019, counsel for Amway sent cease-and-desist letters to "Huifang Yang" at the 8th Avenue Address. Amway did not receive any response to its letters, however, and Defendants continued to sell high volumes of Infringing Products through their "huiya-30" storefront.

38. Through further investigation, Amway determined that no one by the name of "Huifang Yang" resides or has resided at the 8th Avenue address. Accordingly, Amway served a subpoena on PayPal, Inc. ("PayPal") that asked PayPal to disclose personally-identifying information that had been provided by the individual(s) or entity(ies) that created the "huiya-30"

storefront on eBay.  PayPal is a third-party payment service that possesses records of personally-identifying information for all sellers on the eBay website.

39.     In response to the subpoena, PayPal disclosed that the operators of the "huiya-30" storefront identified themselves to PayPal as "huifang yang" and "QU RUI INC." These operators also provided the following address to PayPal: "847 47th Street, Brooklyn, NY 11220."

40.     Through further investigation, Amway discovered that there is a corporation organized under New York law called "Qi Rui Inc".  According to public records, the designated address where the New York Department of State will mail process to Qi Rui Inc is 847 47th Street, Brooklyn, NY 11220," care of "Hui Fang Yang."

41.     Based on these findings, Plaintiffs concluded that Yang and Qi Rui Inc jointly operate the "huiya-30" eBay storefront and are responsible for the conduct complained of herein.

42.     Neither Yang nor Qi Rui Inc are or have ever been Amway IBOs.

43.     On or about August 26, 2019, counsel for Amway sent a cease-and-desist letter to Yang and Qi Rui Inc via email and overnight mail to 847 47th Street, Brooklyn, NY 11220.  The letter demanded that Defendants cease selling Infringing Products and identify all sources that had provided Defendants with Infringing Products.  To date, Amway has not received a response to its letter and Defendants have continued to sell Infringing Products through their "huiya-30" storefront.

44.     As of the time of filing, Defendants are listing more than 70 types of Infringing Products for sale on their "huiya-30" eBay storefront.  In many of these listings Defendants are offering high quantities of each separate type of Infringing Product, meaning that the total amount of Infringing Products in Defendants' inventory appears to number in the hundreds if not thousands.  Defendants' "huiya-30" storefront can be accessed through the following link:

a. https://www.ebay.com/sch/huiya-30/m.html?_nkw=&_armrs=1&_ipg=&_from=

**Defendants Are Infringing the Amway Registered Trademarks by Selling Products Bearing the Amway Registered Trademarks That Are Not Subject To and Interfere with Plaintiffs' Quality Control Requirements**

45.    Defendants, without authorization from Plaintiffs, have sold—and are currently selling—products bearing the Amway Registered Trademarks through their "huiya-30" eBay storefront.  Defendants may also be selling products through additional channels that Plaintiffs have not yet identified.

46.    Plaintiffs have implemented quality control and customer service requirements throughout their authorized channels of distribution.  The products sold by Defendants are not genuine Amway products because they are not subject to, and interfere with, Plaintiffs' quality control and customer service requirements that IBOs must follow.

47.    Plaintiffs' quality control and customer service requirements are legitimate and substantial.  As a result of Defendants' sales of products that are not subject to these requirements, Plaintiffs have lost control of the quality of goods that bear their trademarks.  For example, Plaintiffs have no control over whether Defendants carry out the storage and handling requirements that IBOs are required to follow or whether Defendants sell products that are damaged, defective, repackaged, or otherwise altered.

48.    Defendants are also interfering with Plaintiffs' quality control and customer service requirements, among other ways, because Plaintiffs cannot track or conduct a recall of products that Defendants sell to consumers.  Defendants also do not advise—and are not capable of advising—customers about product information and best practices for safe and optimal use of Amway products because, as non-IBOs, they do not have access to the approved literature and other educational materials that IBOs are given to perform these services.

11

49.     Through their unauthorized use of the Amway Registered Trademarks, Defendants have misled—and continue to mislead—consumers into believing they are purchasing products with the same quality controls as genuine Amway products.  In reality, however, the products sold by Defendants are materially different from genuine Amway products because they are not subject to, and interfere with, Plaintiffs' quality control and customer service requirements.

50.     Defendants' disregard of Amway's cease-and-desist letter and their continued unlawful sales of non-genuine, infringing products show that Defendants are acting intentionally, willfully, and maliciously.

**Defendants Are Infringing the Amway Registered Trademarks by Selling
Products Bearing the Amway Registered Trademarks That
Do Not Come With the Amway Satisfaction Guarantee**

51.     As set forth above, Amway products purchased from Plaintiffs or IBOs come with the Amway Satisfaction Guarantee.  Amway, however, does not provide the Satisfaction Guarantee for products purchased from any third party who is not an IBO because Amway cannot ensure the quality of products sold by sellers that are not subject to Plaintiffs' quality controls.

52.     Because Defendants are not IBOs and, thus, are not subject to Plaintiffs' quality control requirements, the products they sell bearing the Amway Registered Trademarks do not come with the Satisfaction Guarantee.

53.     Because the products Defendants sell do not come with the Satisfaction Guarantee, they are materially different from genuine Amway products.

54.     The Satisfaction Guarantee is a material element of genuine Amway products. Consumers considering whether to purchase Amway products would find it relevant to their purchasing decision to know whether the product they are purchasing is eligible for the Satisfaction Guarantee.  Consumers who purchase Amway products with the Satisfaction Guarantee receive

the peace of mind that they are receiving a high-quality product, that Amway stands behind the product, and that they will have 180 days to get a refund, credit, or product replacement if they are dissatisfied with their product for any reason.

55.     Defendants' unauthorized sale of products bearing the Amway Registered Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine Amway products that come with the Satisfaction Guarantee when, in fact, they are not.

### Defendants Are Tortiously Interfering With Amway's Contracts and Business Relationships With IBOs

56.     As discussed, Plaintiffs sell Amway products to U.S. consumers exclusively through Amway.com and through IBOs.

57.     Amway has entered into contracts with all of its IBOs that prohibit IBOs from selling Amway products to persons or entities that IBOs know, or have reason to know, are going to resell the products on the Internet.

58.     Defendants have sold a high volume of Infringing Products on the Internet.  Neither Yang nor Qi Rui Inc is or has ever been an IBO, and Plaintiffs have not themselves sold any products to Defendants.

59.     Defendants have not disclosed how they obtained the products they have resold on the Internet.  Given that Defendants have sold a high volume of products on the Internet and Plaintiffs have not sold any Amway products to Defendants, however, it is plausible and can reasonably be inferred that Defendants must have purchased the products they have sold from one or more IBOs.

60.     Accordingly, upon information and belief, Defendants have purchased products from IBOs for the purpose of reselling them on the Internet.

61. Amway's contracts with its IBOs are a specific class of contract that Defendants are causing IBOs to breach when they purchase products from IBOs. Although Plaintiffs do not yet know which specific IBO(s) have breached their contracts with Amway—and indeed cannot learn this information until they are able to take discovery from Defendants in this action—Defendants know how they obtained the products they have sold and are on notice of the basis for Plaintiffs' claim of tortious interference.

62. By purchasing Amway products from IBOs and then reselling them on the Internet, Defendants caused and induced IBOs to breach their contracts with Amway.

63. Upon information and belief, Defendants know that Amway's contracts with IBOs prohibit IBOs from selling Amway products to non-IBO third parties, such as Defendants, who the IBOs know or have reason to know are going to resell the products on the Internet. Amway regularly broadcasts that it does not allow Amway products to be sold on marketplace and auction websites such as PayPal and Amazon, and experienced sellers of Amway products—such as Defendants—are well aware that IBOs are prohibited from selling Amway products on these websites or selling to resellers who sell on these websites.

64. Despite having knowledge of this prohibition, Defendants intentionally, knowingly, and willfully interfered with Amway's contracts with its IBOs by inducing IBOs to breach their contracts and sell Amway products to Defendants that Defendants resold on the Internet.

65. In interfering with Amway's contracts, Defendants acted without justification and with a wrongful purpose. Defendants purchased Amway products from IBOs—and in so doing, instigated a breach of the IBOs' contracts with Amway—so that Defendants could unlawfully

14

infringe upon and materially damage the value of the Amway Registered Trademarks by reselling the products on the Internet, thereby committing an independent tort.

66.     If Plaintiffs learn through discovery that Defendants somehow did not obtain any of the products they have resold on eBay from any IBO, Plaintiffs will dismiss their claim for tortious interference.

**Plaintiffs Have Suffered Substantial Harm As A Result of Defendants' Conduct**

67.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, significant monetary harm including, but not limited to, loss of sales, damage to the value of their intellectual property, harm to the goodwill associated with the Amway family of brands, and damage to their existing and potential business relations.

68.     Defendants' conduct was and is knowing, intentional, willful, intentional, malicious, wanton, and contrary to law.

69.     Plaintiffs are entitled to injunctive relief because Defendants will otherwise continue to sell unlawfully products bearing the Amway Registered Trademarks that are materially different from genuine Amway products sold by IBOs and are outside of Plaintiffs' quality controls, thereby compromising Plaintiffs' quality controls.  Defendants' ongoing illegal conduct has caused and will continue to cause irreparable harm to Plaintiffs' reputation, goodwill, business relationships, intellectual property, and brand integrity.

<u>**COUNT I**</u>
**Trademark Infringement**
**15 U.S.C. §§ 1114 and 1125(a)**

70.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

71.     Plaintiffs are the owner and licensee of the Amway Registered Trademarks.

72.     Alticor has registered the Amway Registered Trademarks with the United States Patent and Trademark Office.

73.     The Amway Registered Trademarks are valid and subsisting trademarks in full force and effect.

74.     Defendants have willfully and knowingly used, and continue to use, the Amway Registered Trademarks in commerce for the purpose of selling products on the Internet without Plaintiffs' consent.

75.     The products that Defendants sell bearing the Amway Registered Trademarks are not authorized for sale by Plaintiffs.

76.     Defendants' use of the Amway Registered Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Amway Registered Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Plaintiffs.

77.     Defendants' use of the Amway Registered Trademarks in connection with their sale of Amway products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Amway products.

78.     The products sold by Defendants are not, in fact, genuine and authentic Amway products.  The products sold by Defendants are materially different because, among other reasons, they are ineligible for the Satisfaction Guarantee and are not subject to and interfere with Amway's quality control requirements that IBOs must follow.

79.     Defendants' unauthorized use of the Amway Registered Trademarks has materially damaged the value of the Amway Registered Trademarks, caused significant damage to Plaintiffs' business relations, and infringed on the Amway Registered Trademarks.

80.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

81.     Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Amway Registered Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

82.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' infringement, and unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

83.     Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Amway Registered Trademarks.

## COUNT II
### Unfair Competition
### 15 U.S.C. § 1125(a)(1)(A)

84.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

85.     Plaintiffs are the owner and licensee of the Amway Registered Trademarks.

86.     Alticor has registered the Amway Registered Trademarks with the United States Patent and Trademark Office.

87.     The Amway Registered Trademarks are valid and subsisting trademarks in full force and effect.

88.     Defendants have willfully and knowingly used, and continue to use, the Amway Registered Trademarks in commerce for the purpose of selling Amway products on the Internet without Plaintiffs' consent.

89.     The products that Defendants sell bearing the Amway Registered Trademarks are not authorized for sale by Plaintiffs.

90.     Defendants' use of the Amway Registered Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products offered for sale by Defendants are the same as genuine products legitimately bearing the Amway Registered Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Plaintiffs when they are not.

91.     Defendants' use of the Amway Registered Trademarks in connection with their sale of Amway products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Amway products when they are not.

92.     Defendants' unauthorized sale of products bearing the Amway Registered Trademarks and unauthorized use of the Amway Registered Trademarks in advertising infringes on the Amway Registered Trademarks.

93.     Defendants' unauthorized sale of products bearing the Amway Registered Trademarks and unauthorized use of the Amway Registered Trademarks in advertising has materially damaged the value of the Amway Registered Trademarks and has caused significant damages to Plaintiffs' business relations.

94.     As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

95.     Plaintiffs are entitled to recover their damages caused by Defendants' unfair competition and disgorge Defendants' profits from their unlawful sales and unjust enrichment.

96.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' actions and, unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

97.     Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Amway Registered Trademarks.

## COUNT III
### Trademark Dilution
### 15 U.S.C. § 1125(c)

98.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

99.     Products bearing the AMWAY® trademark have been sold to the public since 1959.  For 60 years, Plaintiffs and their predecessor companies have been recognized by consumers as the source of high quality products bearing the AMWAY® trademark, beginning with cleaning products and expanding to nutrition, beauty, bath and body, cookware, household, and many other types of products.

100.    The AMWAY® trademark was first filed with the United States Patent and Trademark Office in 1960, and was registered in 1961.  Since that time, the AMWAY® trademark has been filed and registered with respect to numerous categories of goods and services.

101.   Alticor owns the Amway Registered Trademarks and has licensed the Amway Registered Trademarks to various subsidiaries, including Amway.

102.   The Amway Registered Trademarks are valid and subsisting trademarks in full force and effect.

103.   Plaintiffs have expended substantial time, effort, money, and resources advertising and promoting products and services under the AMWAY® trademark.  As a result of Plaintiffs' efforts, the AMWAY® trademark is the means by which Amway products and services are distinguished from others in the marketplace.

104.   Plaintiffs market, advertise, and sell products bearing the AMWAY® trademark throughout the United States.

105.   Amway has implemented legitimate and substantial quality controls that it requires all IBOs to follow to protect the Amway name and family of brands.

106.   Consumers throughout the United States recognize and associate the Amway name with quality.

107.   Because of the quality, durability, and dependability of Amway products and Plaintiffs' use of the AMWAY® trademark, consumers trust the Amway name and Amway products.

108.   The AMWAY® trademark is inherently distinctive, and as a result of Plaintiffs' long and continuous use of the AMWAY® trademark, it has acquired a secondary meaning associated by purchasers and the public with Plaintiffs' products and services.

109.   Amway is widely recognized as the designated source of goods bearing the AMWAY® trademark.

110.    For these reasons, since at least 1970, the AMWAY® trademark has been famous, distinctive, and a widely recognized mark by the consuming public.

111.    After the AMWAY® trademark became famous, beginning on or around 2016, Defendants have willfully used the AMWAY® trademark in connection with the unauthorized and illegal sale of products.

112.    Because the products sold by Defendants not subject to Plaintiffs' quality controls, consumers who purchase products from Defendants are more likely to receive a poor quality, damaged, or defective product and have an unsatisfactory customer experience.

113.    Consumers who receive poor quality products that do not come with the Satisfaction Guarantee or customer service provided by IBOs are likely to associate that negative experience with Plaintiffs and the AMWAY® trademark.  As a result Defendants' unauthorized and willful use of the AMWAY® trademark is tarnishing and diluting the value and distinctive quality of the AMWAY® trademark.

114.    Defendants' unlawful actions have harmed the reputation and goodwill associated with the AMWAY® trademark, and Plaintiffs have suffered and will continue to suffer immediate and irreparable injury.  Further, Defendants' actions have harmed and will continue to harm consumers interested in purchasing genuine Amway products.

115.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

116.    Plaintiffs are entitled to recover their damages caused by Defendants' dilution of the AMWAY® Trademark and disgorge Defendants' profits from their unlawful sales and unjust enrichment.

117.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' actions and, unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

118.     Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Amway Registered Trademarks.

### COUNT IV
### Common Law Trademark Infringement and Unfair Competition

119.     Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

120.     This claim arises under the laws of the State of New York.

121.     Plaintiffs are the owner and licensee of the Amway Registered Trademarks.

122.     Alticor has registered the Amway Registered Trademarks with the United States Patent and Trademark Office.

123.     The Amway Registered Trademarks are valid and subsisting trademarks in full force and effect.

124.     Defendants have willfully and knowingly used, and continue to use, the Amway Registered Trademarks in commerce for the purpose of selling products on the Internet without Plaintiffs' consent.

125.     The products that Defendants sell bearing the Amway Registered Trademarks are not authorized for sale by Plaintiffs.

126.     Defendants' use of the Amway Registered Trademarks in connection with their unauthorized sale of products is likely to cause confusion, cause mistake, or deceive consumers because it falsely suggests that the products offered for sale by Defendants are the same as genuine

products legitimately bearing the Amway Registered Trademarks and originate from, or are sponsored by, authorized by, or otherwise connected with Plaintiffs.

127.    Defendants' use of the Amway Registered Trademarks in connection with their sale of Amway products is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are genuine and authentic Amway products.

128.    The products sold by Defendants are not, in fact, genuine and authentic Amway products.  The products sold by Defendants are materially different because, among other reasons, they are ineligible for the Satisfaction Guarantee and are not subject to and interfere with Amway's quality control requirements that IBOs must follow.

129.    Defendants' unauthorized use of the Amway Registered Trademarks has materially damaged the value of the Amway Registered Trademarks, caused significant damage to Plaintiffs' business relations, and infringed on the Amway Registered Trademarks.

130.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, great damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

131.    Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Amway Registered Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

132.    Plaintiffs are also entitled to punitive damages because Defendants have acted with such a conscious and deliberate disregard of the interests of others that their conduct may be called willful or wanton.

<u>**COUNT V**</u>
**Unfair and Deceptive Business Practices**
**NY Gen. Bus. Law § 349**

133.   Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

134.   This claim arises under the laws of the State of New York.

135.   Defendants have engaged and are engaging in consumer-oriented conduct which is deceptive or misleading in a material way, constituting unfair and deceptive business practices in violation of Section 349 of the New York General Business Law.

136.   Defendants' knowing and willful use of the Amway Registered Trademarks in connection with the unauthorized and illegal sale of products is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with Plaintiffs when they are not.

137.   Defendants' knowing and willful use of the Amway Registered Trademarks in connection with the unauthorized and illegal sale of products is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine and authentic Amway products when, in fact, they are not.

138.   Defendants' conduct is likely to mislead a sensible consumer acting reasonably under the circumstances.

139.   Defendants' conduct has resulted or is likely to result in consumer injury or harm to the public interest.

140.   Defendants' unfair and deceptive business practices have caused Plaintiffs to suffer, and continue to suffer, substantial injury, including loss of sales and damage to their existing and potential business relations.

141. Plaintiffs are also entitled to punitive damages because Defendants have acted with such a conscious and deliberate disregard of the interests of others that their conduct may be called willful or wanton.

### COUNT VI
**Tortious Interference with Existing and/or Prospective Contracts
and Business Relationships**

142. Plaintiffs re-allege and incorporate the allegations set forth in the foregoing paragraphs as if fully set forth herein.

143. This claim arises under the laws of the State of New York.

144. Plaintiffs sell Amway products to U.S. consumers exclusively through Amway.com and through IBOs.

145. Amway has entered into contracts with IBOs that prohibit IBOs from selling Amway products to persons or entities that IBOs know, or have reason to know, are going to resell the products on the Internet.

146. Defendants have sold a high volume of Amway products on the Internet.

147. Neither Yang nor Qi Rui Inc are or have ever been IBOs, and Plaintiffs have not themselves sold any Amway products to Yang or Qi Rui Inc.

148. Based on these facts, it is plausible and can reasonably be inferred that Defendants must have purchased the Amway products they have resold from one or more IBOs.

149. By purchasing Amway products from IBOs and then reselling them on the Internet, Defendants caused and induced IBOs to breach their contracts with Amway.

150. Upon information and belief, Defendants know that Amway's contracts with IBOs prohibit IBOs from selling Amway products to third parties, such as Defendants, who the IBOs know or have reason to know are going to resell the products on the Internet. Amway routinely broadcasts that it does not allow Amway products to be sold on marketplace and auction websites

such as PayPal and Amway, and experienced sellers of Amway products—such as Defendants—are well aware that IBOs are prohibited from selling Amway products on these websites or selling to resellers who sell on these websites.

151. Despite having knowledge of this prohibition, Defendants intentionally, knowingly, and willfully interfered with Amway's contracts with its IBOs by inducing IBOs to breach their contracts and sell Amway products to Defendants that Defendants resold on the Internet.

152. In interfering with Amway's contracts, Defendants acted without justification and with a wrongful purpose. Defendants purchased Amway products from IBOs—and in so doing, instigated a breach of the IBOs' contracts with Amway—so that Defendants could unlawfully infringe upon and materially damage the value of the Amway Registered Trademarks by reselling the products on the Internet, thereby committing an independent tort.

153. Defendants were not parties to the contracts that they caused IBOs to breach.

154. Defendants' actions have caused Plaintiffs to suffer, and continue to suffer, substantial injury, including loss of sales and damage to their existing and potential business relations.

155. Plaintiffs are also entitled to punitive damages because Defendants have acted with such a conscious and deliberate disregard of the interests of others that their conduct may be called willful or wanton.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A. Judgment in favor of Plaintiffs and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble

damages, restitution, disgorgement of profits, punitive damages, exemplary damages, and pre-judgment and post-judgment interest, as permitted by law;

    B.    A permanent injunction enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

    i)    Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all Amway products,

    ii)    Prohibiting the Enjoined Parties from using any of the Amway Registered Trademarks in any manner, including advertising on the Internet,

    iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Amway products as well as any products bearing any of the Amway Registered Trademarks,

    iv)    Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Amway Registered Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing these trademarks,

    v)    Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any Amway products or any of the Amway Registered Trademarks,

    vi)    Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of the Amway Registered Trademarks which associate Amway products or the Amway Registered Trademarks with the Enjoined Parties or the Enjoined Parties' websites,

    vii)    Requiring the Enjoined Parties to take all action to remove the Amway Registered Trademarks from the Internet, including from the website www.ebay.com;

    C.    An award of attorneys' fees, costs, and expenses; and

D.      Such other and further relief as the Court deems just, equitable and proper.

### **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

Dated:  October 10, 2019                    Respectfully submitted

/s Ryan Weiner
Anna Aguilar
Ryan Weiner
AGUILAR BENTLEY LLC
5 Penn Plaza, 19th Floor
New York, NY 10001
Telephone: (212) 835-1521
Facsimile: (646) 924-0599
aaguilar@aguilarbentley.com
rweiner@aguilarbentley.com
***Attorneys for Plaintiffs Alticor Inc. and
Amway Corp.***